IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | | |
|---|---|---|
| Allison Whitney Barnes, | ) | Civil Action No. 6:16-3065-MGL-KFM |
| | ) | |
| Plaintiff, | ) | |
| | ) | **REPORT OF MAGISTRATE JUDGE** |
| v. | ) | |
| | ) | |
| Nancy A. Berryhill, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This case is before the court for a report and recommendation pursuant to

Local Civil Rule 73.02(B)(2)(a) (D.S.C.), concerning the disposition of Social Security cases

in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3)

of the Social Security Act, as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain

judicial review of a final decision of the Commissioner of Social Security denying her claims

for disability insurance benefits and supplemental security income benefits under Titles II

and XVI of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

The plaintiff filed applications for disability insurance benefits ("DIB") and

supplemental security income ("SSI") benefits on May 20 and December 1, 2013,

respectively, alleging she became unable to work on April 30, 2012.  The applications were

denied initially and upon reconsideration by the Social Security Administration.  On

_____

[1]A report and recommendation is being filed in this case, in which one or both parties
declined to consent to disposition by the magistrate judge.

December 16, 2013, the plaintiff requested a hearing. The administrative law judge ("ALJ"), before whom the plaintiff and Thomas C. Neil, an impartial vocational expert, appeared on February 6, 2015, considered the case *de novo*, and on March 17, 2015, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. The ALJ's finding became the final decision of the Commissioner of Social Security when the Appeals Council denied review on August 18, 2016. The plaintiff then filed this action for judicial review.

In making the determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

(1)    The claimant meets the insured status requirements of the Social Security Act through June 30, 2017.

(2)    The claimant has not engaged in substantial gainful activity since April 30, 2012, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.* and 416.971 *et seq.*).

(3)    The claimant has the following severe impairments: diabetes mellitus, hepatitis C, and bipolar disorder (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

(4)    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

(5)    After careful consideration of the entire record, the undersigned finds that, the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except she must avoid all exposure to industrial hazards. She cannot climb or crawl. She is limited to work in a low stress setting with no more than occasional changes in the setting or more than occasional decisionmaking. Furthermore, the claimant is limited to no interaction with the general public and no more than occasional interaction with coworkers and supervisors.

(6)     The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

(7)     The claimant was born on February 18, 1964, and was 48 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 C.F.R. §§ 404.1563 and 416.963).

(8)     The claimant has at least a high school education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964).

(9)     Transferability of job skills is not material to the determination of disability because the Medical-Vocational Rules support a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

(10)    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).

(11)    The claimant has not been under a disability, as defined in the Social Security Act, from April 30, 2012, through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(A), (H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected

to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a).

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that meets or medically equals an impairment contained in the Listing of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1, (4) can perform his past relevant work, and (5) can perform other work. *Id.* §§ 404.1520, 416.920. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.* §§ 404.1520(a)(4), 416.920(a)(4).

A claimant must make a *prima facie* case of disability by showing he is unable to return to his past relevant work because of his impairments. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). Once an individual has established a *prima facie* case of disability, the burden shifts to the Commissioner to establish that the plaintiff can perform alternative work and that such work exists in the national economy. *Id.* (citing 42 U.S.C. § 423(d)(2)(A)). The Commissioner may carry this burden by obtaining testimony from a vocational expert. *Id.* at 192.

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial

evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id*. Consequently, even if the court disagrees with Commissioner's decision, the court must uphold it if it supported by substantial evidence. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## EVIDENCE PRESENTED

The plaintiff was 48 years old on her alleged disability onset date (April 30, 2012) and 51 years old on the date of the ALJ's decision (March 17, 2016). She has a high school equivalency degree (Tr. 46) and past relevant work as a culinary manager (Tr. 37).

The plaintiff saw her primary care physician, Christopher Wimberly Jr., M.D., of Summerville Family Practice on May 2, 2012, for diabetes and occasional hypoglycemia. Assessment was diabetes mellitus type 2, hepatitis C, alcoholism, hypercholesterolemia, and generalized anxiety. Metformin was decreased. A future sleep study would be considered for chronic insomnia (Tr. 273).

The plaintiff returned to Dr. Wimberly on August 1, 2012, with increased stress secondary to finances and losing her job. Dr. Wimberly noted that the plaintiff was mildly anxious and elevated (Tr. 272).

On February 5, 2013, the plaintiff returned to Dr. Wimberly. She had recently moved back to South Carolina from New Jersey. She had trouble dealing with changes and

described periods of low mood and then periods of feeling great. On physical examination, she was noted to be overweight. Dr. Wimberly opined she should apply for disability and advised her to attend Alcoholics Anonymous (Tr. 269-70).

On March 6, 2013, Dr. Wimberly diagnosed the plaintiff with bipolar disorder and prescribed a trial of Lamictal (Tr. 267-68). In June 2013, the plaintiff reported she felt a little anxious and manic, although medication helped with depression. Lamictal was increased, and Paxil was refilled (Tr. 263-64).

On July 30, 2013, Dr. Wimberly completed a state agency questionnaire. He reported that the plaintiff had been diagnosed with bipolar disorder and anxiety. He indicated she had a distractible thought process. Dr. Wimberly stated the plaintiff had a serious work-related limitation due to her mental condition. He further noted she had difficulty with handling stressful situations and normal job related pressures. Dr. Wimberly stated that medication helped the plaintiff's condition, and he had not recommended psychiatric care for the plaintiff (Tr. 277).

On followup in September 2013, the plaintiff reported difficulty with trying to cope and feeling guilty about not being able to cope. Dr. Wimberly advised her to continue with the disability process. Lamictal was increased (Tr. 302-04).

On September 23, 2013, John V. Custer, M.D., evaluated the plaintiff in a consultative mental status examination. He noted that no records were provided in her file. The plaintiff had been diagnosed with bipolar disorder and attention deficit hyperactivity disorder ("ADHD") after moving to Charleston. She reported having some psychological

problems and obsessive compulsive symptoms in New Jersey but could not afford treatment. She also had problems with focus. She had a bout of depression after moving here and had not wanted to get out of bed. She had a history of some impulsive spending and gambling. She reported difficulty sleeping but not necessarily a decreased need for sleep. She reported she had never seen a psychiatrist due to cost. The plaintiff's family physician prescribed her psychiatric medications. She was taking Paxil 20 mg a day and lamotrigine 200 mg a day. Dr. Custer noted on mental status exam that her activity appeared to be increased and quicker than normal. She spoke rapidly, and at times she became tangential or lost her train of thought. Her affect varied according to the content. Dr. Custer diagnosed possible cyclothymia (a cycling mood disorder), cannot rule out ADHD, history of pathological gambling in remission, history of cannabis abuse in sustained remission, and history of alcohol abuse in sustained remission. Dr. Custer noted that the plaintiff had symptoms that crossed the boundary between bipolar disorder and ADHD. He noted she may benefit from seeing a board-certified psychiatrist who could place her on appropriate medication (Tr. 281-83).

On October 22, 2013, Dr. Wimberly prescribed Zolpidem for insomnia (Tr. 300-301). The plaintiff returned for followup on February 6, 2014. She reported she had been "amped up" recently and talked louder and faster. On examination, the plaintiff's mood and affect were appropriate for situation (hypomanic). She had rapid speech. Lamotrigine was increased (Tr. 297-99).

The plaintiff was evaluated by Randall Marosok, M.D., of Lowcountry Infectious Diseases on March 3, 2014, for chronic hepatitis C. He recommended fibrosure assay and AFP levels for cancer screening when she obtained funds. She was not a candidate for interferon-based therapy secondary to underlying anxiety and bipolar disorder. Treatment would be placed on hold until recommendations for the "best" non-interferon based regimen (Tr. 320-22).

The plaintiff reported to Dr. Wimberly on April 29, 2014, that she had recently felt more manic and had rapid speech (Tr. 294-96). He increased Lamictal to 200 mg BID and added Risperidone. On May 27, 2014, the plaintiff returned for followup of mood and diabetes. She had noticed she was slightly off balance and had a slight baseline tremor. She was mildly anxious. Lamictal was decreased to 300 mg daily to see if balance and coordination symptoms improved (Tr. 291-93).

On July 31, 2014, the plaintiff reported to Dr. Wimberly occasional morning nausea with emesis and an episode of slight blood with vigorous emesis the previous week. The plaintiff discussed her desire to have GI evaluation for likely diabetes mellitus gastroparesis and EGD. She was given a trial of low dose metoclopramide (Tr. 288-90).

An ultrasound of the plaintiff's abdomen in October 2014 revealed mild hepatomegaly with fatty infiltration (Tr. 310). On October 23, 2014, Dr. Wimberly added Novolog to her medication regimen for elevated blood glucose. He advised her to keep pursuing disability (Tr. 311-13). The plaintiff returned to Dr. Wimberly on January 20, 2015. She reported uncontrollable shaking in the hands and feet at times and being "loud" at

times.  Dr. Wimberly noted that the plaintiff was mildly hypomanic and had mild asterixis. Her current medications were continued.  He wrote that she had been advised not to drive as her current condition interfered with her ability to operate a motor vehicle safely.  Dr. Wimberly opined the plaintiff was definitely qualified for disability due to her bipolar disorder (Tr. 314-17).

At the time of her administrative hearing, the plaintiff was a week away from her 51st birthday (Tr. 45).  She lived with her 85 year old mother and her 28 year old autistic nephew (Tr. 46).  She had not worked full-time since her onset date, had no income, and no health insurance (Tr. 46).

The plaintiff testified that she had attempted to work at a restaurant, but after six days, "then we had a mutual understanding," and she was let go (Tr. 47).  She was not able to do the work they were asking of her (Tr. 49).  She explained periods of feeling shaky due to her diabetes and stated she was constantly nauseous and frequently vomited "without warning" due to her hepatitis C.  She testified that her hands frequently shook (Tr. 54).

In addition to her physical issues, the plaintiff testified that she had difficulty with her anxiety disorder (Tr. 50).  She became hyper when she was nervous.  Needing to remember or write things down made her nervous, and she was nervous about getting sick. She described panic attacks at work and feelings of paranoia (Tr. 51).  She had episodes where she did not leave her house for several days.  The plaintiff said that her doctor had told her not to drive.  The day of the hearing was the first day the plaintiff had gotten out of

bed and taken a shower since "easily last week" (Tr. 55). Her bipolar medications were not helping her (Tr. 57).

The plaintiff further testified that she was unable to afford psychiatric care and that her primary care doctor discounted her treatment and tried to give her free samples of medication whenever he could (Tr. 52). Recently, the plaintiff's doctor had joined up with a larger practice, and he could no longer do these things, and this was limiting her care. She sold her possessions for cash. She lived with her mother for free and received food stamps (Tr. 53).

The plaintiff's sister-in-law testified on the plaintiff's behalf (Tr. 59). She stated she saw the plaintiff every week. She testified that the plaintiff had poor memory, was very depressed, and needed encouragement just to get out of bed (Tr. 60). She explained that the plaintiff used to be quite independent and had greatly declined in her ability to function and "take care of things" (Tr. 61). She testified that the plaintiff had lost 75 pounds in the past two years (Tr. 62).

The vocational expert classified the plaintiff's past relevant work was all "at the high end of semi-skilled" (Tr. 63). The ALJ described a hypothetical worker of the plaintiff's age, education, and work experience who was restricted to light work with no exposure to hazards, no climbing or crawling, and required a low stress setting with no more than occasional decisionmaking or changes in the work setting, no interaction with the general public, and no more than occasional interaction with coworkers and supervisors. The vocational expert testified that there would be a "very narrow range" of unskilled work

available because of the limitation to only occasional contact with coworkers (Tr. 63-64).

The vocational expert identified the available jobs as laundry garment bagger, hand presser, and garment sorter (Tr. 64). The vocational expert testified that the limitation to occasional interaction with coworkers reduced the light unskilled work by 50 percent (Tr. 65). If the worker were off-task and unable to focus and persist for 20 percent of the work day, no work would be available at all (Tr. 65).

## ANALYSIS

The plaintiff argues that ALJ erred by (1) failing to perform a function-by-function analysis when determining her residual functional capacity ("RFC"); (2) failing to properly evaluate her credibility; and (3) improperly evaluating the medical opinion evidence (doc. 15 at 7-12).

### RFC Assessment

The plaintiff contends that the RFC assessment is not supported by substantial evidence because the ALJ failed to perform a function-by-function analysis (doc. 15 at 7-8). Social Security Ruling ("SSR") 96-8p provides in pertinent part:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraph (b), (c), and (d) of 20 C.F.R. §§ 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional level of work, sedentary, light, medium, heavy and very heavy.

SSR 96-8p, 1996 WL 374184, at *1. The ruling further provides:

The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Id.* at *7 (footnote omitted). Further, "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.* Moreover, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.*

The Fourth Circuit has clarified that while the RFC assessment must include a narrative discussion describing how the evidence supports the ALJ's conclusions, there is no particular language or format to follow so long as it permits meaningful judicial review. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016). There is no *per se* rule requiring a court remand a case when the ALJ does not perform an explicit function-by-function analysis. *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015). However, remand may be appropriate where an ALJ does not discuss a claimant's capacity or ability to perform

relevant functions or whether "other inadequacies in the ALJ's analysis frustrate meaningful review." *Id*. (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)).

The plaintiff acknowledges that the ALJ is not required to assess functions not called into question by the evidence, but argues that the ALJ erred in the RFC analysis by failing to address "two key issues . . . One, the effect of even occasional [gastrointestinal ("GI")] symptoms due to either diabetes or hepatitis C. Two, [the plaintiff] developed asterixis in her feet and hands in 2014" (doc. 15 at 8-9). The Commissioner argues that the plaintiff's allegations are not supported by the record (doc. 16 at 5).

In support of her argument regarding her GI symptoms, the plaintiff cites the following evidence: she testified at the hearing that she was sick nearly every day and that this was part of what made it impossible for her to keep her most recent job (Tr. 49, 52, 54); in March 2014, at a visit to Lowcountry Infectious Diseases, the review of systems was positive for vomiting (Tr. 320-22); in July 2014, Dr. Wimberly recorded the plaintiff's complaints of occasional morning nausea with emesis (vomiting) and a recent episode of blood with vigorous emesis the week prior to her visit (Tr. 288-90); Dr. Wimberly felt this was "likely DM gastroparesis," and a trial of low dose metoclopramide was prescribed (Tr. 288-90); and she remained on the medication at a visit with Dr. Wimberly in January 2015 (Tr. 315).

The ALJ considered the plaintiff's allegation of daily vomiting and found that, while the plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence, and

limiting effects of the symptoms were not entirely credible (Tr. 35-37). Specifically, the ALJ found that the allegation of daily vomiting was "not supported by any of the evidence of record" (Tr. 36-37). The plaintiff argues that this statement "is simply inaccurate" (doc. 15 at 11). The undersigned disagrees. There simply is no mention in the medical record of daily vomiting. At visits with Dr. Wimberly in June and September 2013 and February, April, and May 2014, the plaintiff denied nausea or vomiting (Tr. 292, 295, 298, 303, 308). As noted above, in March 2014, the plaintiff's review of systems was positive for vomiting with no further discussion (Tr. 320-22). The record reveals that after the plaintiff's report of *occasional* morning nausea with vomiting in July 2014, Dr. Wimberly prescribed a low dose of metoclopramide (Tr. 288-90). At subsequent followup visits to Dr. Wimberly in October 2014 and January 2015, the plaintiff denied nausea or vomiting (Tr. 312, 315). Additionally, in medical records from the plaintiff's visit to Lowcountry Infectious Diseases in February 2016, which were submitted to the Appeals Council and made a part of the record, the review of symptoms shows that the plaintiff reported no nausea or vomiting (Tr. 23). Accordingly, the undersigned finds no error in the ALJ's analysis of this issue (Tr. 36-37).

The plaintiff further contends that the ALJ erred in failing to assess functional limitations caused by asterixis in her hands and feet (doc. 15 at 8). In support of her argument, the plaintiff cites the following evidence: in May 2014, Dr. Wimberly noted the plaintiff's report of a "slight baseline tremor," and Lamotrigine was decreased to see if this would help her coordination symptoms (Tr. 291-93); in January 2015, the plaintiff reported "some uncontrollable shaking of feet and hands at times," which Dr. Wimberly described as

"mild asterixis" (Tr. 315-16); and, at the January 2015 visit, Dr. Wimberly advised the plaintiff not to drive as she had recently been in a motor vehicle accident and "her current condition interferes with her ability to operate motor vehicle safely" (Tr. 316, 318).

In the RFC assessment, the ALJ noted the plaintiff's testimony that she could not drive and that "her diabetes was causing her to shake sometimes" (Tr. 35). While the ALJ did not further discuss the plaintiff's asterixis, the RFC assessment limited the plaintiff to light work with no exposure to industrial hazards and no climbing or crawling (Tr. 34). The plaintiff has offered no argument or evidence as to what functional limitations greater than those the ALJ assessed in the RFC assessment she requires due to her asterixis. Moreover, given the very limited evidence of record – two notations describing "mild" asterixis and a "slight" baseline tremor – the undersigned finds that the ALJ failure to further discuss the plaintiff's asterixis was harmless error. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); *Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir.1994) (finding the ALJ's error harmless where the ALJ would have reached the same result notwithstanding).

Based upon the foregoing, the plaintiff has not shown that the RFC assessment was unsupported by substantial evidence or reached through application of an incorrect legal standard.

*Credibility*

The plaintiff further argues that the ALJ erred in failing to properly evaluate her credibility (doc. 15 at 9-11).  The Fourth Circuit Court of Appeals has stated as follows with regard to the analysis of a claimant's subjective complaints:

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process.  First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and *which could reasonably be expected to produce the pain or other symptoms alleged*. . . .
>
> ***
>
> It is only *after* a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig v. Chater*, 76 F.3d 585, 594-95 (4th Cir. 1996) (citations and internal quotation marks omitted) (emphasis in original).  In *Hines v. Barnhart*, a Fourth Circuit Court of Appeals panel held, "Having met his threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, [the claimant] was entitled to rely exclusively on subjective evidence to prove the second part of the test, i.e., that his pain [was] so continuous and/or severe that it prevent[ed] him from working a full eight-hour day." 453 F.3d 559, 565 (4th Cir. 2006).  However, the court in *Hines* also acknowledged that "'[o]bjective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or

sensory or motor disruption), if available should be obtained and considered.'" *Id*. at 564

(quoting SSR 90-1p, 1990 WL 300812). The court further acknowledged:

> While objective evidence is not mandatory at the second step of the test, "[t]his is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. They most certainly are. Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers."

*Id*. at 565 n.3 (quoting *Craig*, 76 F.3d at 595). *See Johnson v. Barnhart*, 434 F.3d 650, 658

(4th Cir. 2005); 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) ("We must always attempt to

obtain objective medical evidence and, when it is obtained, we will consider it in reaching

a conclusion as to whether you are disabled. However, we will not reject your statements

about the intensity and persistence of your pain or other symptoms or about the effect your

symptoms have on your ability to work solely because the available objective medical

evidence does not substantiate your statements.").

A claimant's symptoms, including pain, are considered to diminish his capacity

to work to the extent that alleged functional limitations are reasonably consistent with

objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).

Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as

long as the ALJ "sets forth the specific evidence [he] relies on" in evaluating the claimant's

subjective symptoms. *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *4.[2] The factors to be considered by an ALJ in evaluating the intensity, persistence, and limiting effects of an individual's symptoms include the following:

(1) the individual's daily activities;

(2) the location, duration, frequency, and intensity of the individual's pain or other symptoms;

(3) factors that precipitate and aggravate the symptoms;

(4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

---

[2] Effective March 28, 2016, SSR 96-7p was superseded by SSR 16-3p, 2016 WL 1119029. *See* 2016 WL 1237954 (correcting the effective date of SSR 16-3p to read March 28, 2016). Because this application was adjudicated prior to the effective date of SSR 16-3p, the court analyzes the plaintiff's allegations under SSR 96-7p. *See Best v. Berryhill*, C.A. No. 0:15-cv-02990-DCN, 2017 WL 835350, at *4 n.3 (Mar. 3, 2017) (applying SSR 96-7p under the same circumstances). Regardless, the court observes that SSR 16-3p discontinues use of the term "credibility," but "the methodology required by both SSR 16-3p and SSR 96-7, are quite similar. Under either, the ALJ is required to consider [the claimant's] report of his own symptoms against the backdrop of the entire case record." *Id*. (alteration in original) (quoting *Sullivan v. Colvin*, C.A. No. 7:15-cv-504, 2017 WL 473925, at *3 (W.D. Va. Feb. 3, 2017)). *See also Keaton v. Colvin*, C.A. No. 3:15-cv-588, 2017 WL 875477, at *6 (E.D. Va. Mar. 3, 2017) ("Effective as of March 28, 2016, SSR 16-3p superseded SSR 96-7p. SSR 16-3p effectively removes the use of the term 'credibility' but does not alter the substantive analysis.").

(5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

(6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

(7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c), 416.929(c).

The plaintiff specifically argues that the ALJ erred in failing to discuss the fact that she was unable to afford treatment (doc. 15 at 10). In the RFC assessment, the ALJ noted the plaintiff's testimony that she went to a liver specialist once but could not afford additional treatment for her hepatitis C and was found to not be a candidate for interferon treatment (Tr. 35-36). While the ALJ also noted that the plaintiff's hepatitis C had been treated conservatively (Tr. 37), there is no indication that the ALJ found the lack of interferon treatment or lack of further treatment by a specialist reflected negatively on her credibility, as suggested by the plaintiff (doc. 15 at 10). In evaluating the evidence regarding the plaintiff's hepatis C, the ALJ noted that an ultrasound of the plaintiff's abdomen in October 2014 documented only mild hepatomegaly with fatty infiltration (Tr. 36-37; *see* Tr. 310). The ALJ concluded that "the record does not reveal that the [plaintiff] has liver damage from her hepatitis C that would preclude work within the [RFC assessment]" (Tr. 36). The undersigned finds no error with this assessment.

The ALJ noted the plaintiff's noncompliance with treatment for her diabetes, stating that the record showed her diabetes improved with treatment and compliance (Tr. 36). Specifically, the ALJ noted that the plaintiff reported only taking Lantus sporadically, and when she was noncompliant, her blood sugars were elevated, but when she was taking her medication, her blood sugars were not elevated (Tr. 36; *see* Tr. 262, 264, 269, 292, 298). While the plaintiff argues that the ALJ did not take into account the fact that she was limited in her ability to afford treatment (doc. 15 at 11), the plaintiff's testimony and treatment notes show that Dr. Wimberly gave the plaintiff diabetes medication and testing supplies during the period at issue, and there is no indication in the record that any noncompliance as to her diabetic treatment was the result of a lack of funds (Tr. 54, 57, 262, 264, 293, 296, 304, 308, 313).

In evaluating the plaintiff's credibility, the ALJ also noted that, after her alleged disability onset date (April 30, 2012), the plaintiff worked for a time at Ruby Tuesday (Tr. 36; *see* Tr. 47-48, 266). As argued by the Commissioner, the work done by a claimant during any period in which the claimant believes she is disabled may show that she is able to work at the substantial gainful activity level, and, even if the work was not substantial gainful activity, it may show that the claimant was able to do more work than she actually did. 20 C.F.R. §§ 404.1571, 416.971.

The ALJ also considered that the record showed improvement in the plaintiff's bipolar disorder with medication. *See id.* §§ 404.1529(c), 416.929(c) (stating that effectiveness of any medication the individual takes or has taken to alleviate pain or other

symptoms is appropriate factor for consideration in evaluating a claimant's subjective complaints). Substantial evidence supports this finding (Tr. 262, 266, 290, 293, 308, 315). In consideration of the plaintiff's mental impairment, the ALJ limited the plaintiff to work in a low stress setting with no more than occasional changes in setting or more than occasional decision making with limited to no interaction with the public and no more than occasional interaction with coworkers and supervisors (Tr. 34-35).

Based upon the foregoing, the plaintiff has failed to show that the ALJ's assessment of her subjective complaints was unsupported by substantial evidence or reached through application of an incorrect legal standard.

### Medical Opinions

Lastly, the plaintiff argues that the ALJ improperly evaluated the opinion evidence of record (doc. 15 at 11-12). The regulations require that all medical opinions in a case be considered. 20 C.F.R. §§ 404.1527(b), 416.927(b). The regulations further direct ALJs to accord controlling weight to a treating physician's opinion that is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and that is not inconsistent with the other substantial evidence of record. *Id.* §§ 404.1527(c)(2), 416.927(c)(2). If a treating physician's opinion is not given controlling weight, the ALJ must proceed to weigh the treating physician's opinion, along with all the other medical opinions of record, based upon the following non-exclusive list of factors: (1) the examining relationship; (2) the length of the treatment relationship and the frequency of the examinations; (3) the nature and extent of the treatment relationship; (4) the evidence with

which the physician supports his opinion; (5) the consistency of the opinion; and (6) whether the physician is a specialist in the area in which he is rendering an opinion. *Id.* §§ 404.1527(c)(1)-(5), 416.927(c)(1)-(5).[3] *See also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005).

The plaintiff specifically argues that the ALJ erred in failing to sufficiently explain the weight given to Dr. Wimberly's opinion (Tr. 15 at 11-12). As more fully set forth above, in July 2013, Dr. Wimberly stated the plaintiff had a serious work-related limitation due to her mental condition and she had difficulty with handling stressful situations and normal job related pressures. Dr. Wimberly stated that medication helped the plaintiff's condition, and he had not recommended psychiatric care for the plaintiff (Tr. 277). Further, in January 2015, Dr. Wimberly noted that the plaintiff was mildly hypomanic and had mild asterixis, and he wrote that she had been advised not to drive as her current condition interfered with her ability to operate a motor vehicle safely. Dr. Wimberly further that opined the plaintiff was definitely qualified for disability due to her bipolar disorder (Tr. 316).

The ALJ stated that he had "carefully considered the opinion evidence of record, including the statements from Dr. Wimberly that the [plaintiff] cannot drive and that she has a serious work-related limitation in function due to a mental condition" (Tr. 36). The

_____

[3] These regulations apply for claims, like the plaintiff's, filed before March 27, 2017. *See* 20 C.F.R. §§ 404.1527, 416.927. For claims filed on or after March 27, 2017, a new regulatory framework for considering and articulating the value of medical opinions has been established. *See id.* §§ 404.1520c, 416.920c. *See also* 82 FR 5867, 2017 WL 168819 (revisions to medical evidence rules dated Jan. 18, 2017, and effective Mar. 27, 2017).

ALJ found that "[n]either statement is internally inconsistent with the [RFC assessment]" and gave the statements some weight (Tr. 36).

The plaintiff notes that Dr. Wimberly "consistently opined" that she was a candidate for disability due to her bipolar disorder (doc. 15 at 12). While Dr. Wimberly did make this statement on several occasions, statements that a claimant is disabled are not medical opinions and are on an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d). As to Dr. Wimberly's opinion that the plaintiff had a serious work-related limitation due to her mental condition and that she had difficulty with handling stressful situations and normal job related pressures, the ALJ limited the plaintiff to work in a low stress setting, no more than occasional changes in setting, no more than occasional decision making, no interaction with the general public, and no more than occasional interaction with coworkers and supervisors (Tr. 34-35). As argued by the Commissioner, the RFC demonstrates that the ALJ accorded this opinion some weight.

In making the RFC assessment, the ALJ also gave some weight to the opinions of the state agency psychological consultants with respect to the plaintiff's mental limitations (Tr. 36). Drs. Neboschick and Hamrick both opined that the plaintiff is able to understand and remember normal instructions, can sustain attention for basic tasks for periods of two-hour segments, adapt to changes if they are infrequent and gradually introduced, make basic work-related decisions, work in the presence of others, accept supervision, and works best in situations that do not involve much direct ongoing interaction with the public or coworkers (Tr. 74, 85-86). The ALJ was required to consider the state

agency psychological consultants' assessments as opinion evidence as they "are highly qualified and experts in Social Security disability evaluation." *See* 20 C.F.R. §§ 404.1513a(b), 404.1527(e), 416.913a(b), 416.927(e).

The plaintiff argues that the ALJ ignored the issue of her tremor, which thereby caused him to misunderstand Dr. Wimberly's driving restriction (doc. 15 at 11-12). The undersigned finds no reversible error. Whether the driving restriction was caused by the plaintiff's asterixis or bipolar disorder, or a combination of both, Dr. Wimberly's statement that the plaintiff could not drive was not internally inconsistent with the RFC assessment, as the ALJ correctly found (Tr. 36; *see* Tr. 277, 316). As noted by the ALJ, Dr. Wimberly did not place restrictions on the plaintiff that would preclude work activity (Tr. 36). The ALJ limited the plaintiff to light work with no exposure to industrial hazards and no climbing or crawling (Tr. 34), and the plaintiff has offered no argument or evidence as to what functional limitations greater than those the ALJ assessed in the RFC assessment she requires due to her asterixis.

Based upon the foregoing, the plaintiff has failed to show that the ALJ's decision with regard to the medical opinion evidence was unsupported by substantial evidence or reached through application of an incorrect legal standard.

## CONCLUSION AND RECOMMENDATION

The Commissioner's decision is based upon substantial evidence and is free of legal error.  Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the Commissioner's decision be affirmed .

IT IS SO RECOMMENDED.

s/Kevin F. McDonald
United States Magistrate Judge

December 1, 2017
Greenville, South Carolina